No. 30,951

J. W. WHITACRE, *Appellee*, v. THE STATE BANK OF KEATS and CHARLES W. JOHNSON, as Receiver, etc., *Appellants*.

(26 P. 2d 584.)

Opinion filed November 11, 1933.

*George D. Rathbun*, of Manhattan, for the appellants.

*Charles Hughes*, of Manhattan, *James V. Humphrey* and *Arthur S. Humphrey*, both of Junction City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action against a failed bank and its receiver to establish a claim for money alleged to have been loaned

by plaintiff to the bank. The jury answered special questions and returned a verdict for plaintiff, and defendant has appealed.

The State Bank of Keats, with a capital of $10,000, appears from the evidence to have been managed almost entirely by Grace E. Wood, whose title was assistant cashier. Her husband had the title of cashier, but he was the postmaster and devoted most of his time to his position, the post office being conducted in the same building with the bank. Plaintiff carried an account at the bank. About March 3, 1927, he had received a check for $900, which he took to the bank with the intention of depositing it. He testified Mrs. Wood "asked me what I was going to do with it, and I told her I didn't know what I would do with it right away, and she said the bank would like to borrow it and that they would pay me seven per cent interest on it, and she said I will give you a cashier's receipt and you can get your money any time that you want it." After some further conversation he accepted the proposition, indorsed the check and gave it to her, and she wrote out and handed him the following:

"THE STATE BANK OF KEATS

Keats, Riley County, Kansas, Mar. 3, 1927.

Received of J. W. Whitacre

Nine hundred and no-100.......................................Dollars

For note—at 7%

$900.00                                      GRACE E. WOOD."

Under substantially the same agreement each time, plaintiff let defendant have $600 October 29, 1928, $4,500 February 27, 1930, and $2,500 July 5, 1930. For these items the plaintiff gave checks, signed by him but written by Mrs. Wood, on his account in the bank, and instead of naming a payee used the term "to be loaned," or "for loaning," in the space where the payee's name ordinarily is written. The receipt for the $600 said nothing about a note nor the rate of interest, and was signed "Grace E. Wood, A. Cashier." The other receipts had no official designation after her name. The one for $4,500 contained the statement "To be loaned at 7%," and the one for $2,500, dated July 5, stated nothing about loaning, but contained this: "Int. from April 1, 1930." There was evidence tending to show, and the jury specifically found in answer to special questions, that the money was used by the bank in its general banking business. After the bank had failed plaintiff learned in some way that Grace E. Wood was contending that she personally

had borrowed the money from plaintiff. On the advice of his attorney he went to her and asked about it. She was then making up a list from a bunch of notes. He testified:

"She said they had a bunch of notes there and she didn't know who they belonged to. . . . I told her that my money was not in that bunch of notes. . , . She said, 'I don't know if it is in those particular notes or not.'"

Finally notes were tendered plaintiff as notes in which Grace E. Wood had invested his money. The notes had been made payable to the bank, two of them for overdrafts the makers owed the bank, and the others were renewals of notes which the makers owed the bank. Plaintiff declined to accept them and brought this action.

The real controversy in the case is whether plaintiff dealt with Grace E. Wood individually by letting her have his money to loan for him, or whether he dealt with the bank, loaning his money to the bank. Such conflict as there was in the evidence on that point was resolved in favor of the plaintiff by the jury and is amply supported. We have no reason to disturb it. Each six months until October, 1930, plaintiff was credited on his amount at the bank with interest on these several sums at the rate of seven per cent per annum.

It is argued by appellant that the contract, if made, was illegal, hence not binding on the bank. If the bank got the money on the agreement, as testified to by plaintiff, and used it, it is not in position to plead *ultra vires*. Appellant next argues that the receipts and checks show written contracts. The evidence showed they were written by Mrs. Wood. It is clear that they are ambiguous and do not purport to embody complete terms of contracts. In such a case the true contracts could be shown by parol evidence. There was evidence on behalf of defendant that when Mrs. Wood received the checks from plaintiff she placed them to the credit of what was called a "collection account" in the bank, and her testimony was to the effect that this was a personal account of hers and was the money of plaintiff and others she was handling personally. There is considerable evidence, however, to the effect that the account was one of those miscellaneous accounts sometimes kept in banks for such purposes as the bank's officials see fit to keep them, and various transactions were handled through it. Aside from that there is no evidence tending to show that plaintiff knew how the books of the bank were kept, and we are unable to see how he was greatly concerned with that question. The rights of the parties depended upon

their agreement, not on how the books of the bank were kept without plaintiff's knowledge. At the trial there was some evidence with respect to an overdraft in this collection account, and perhaps in some other accounts at certain times. On the hearing of the motion for a new trial it was shown that at some time during the trial one of the jurors asked the court whether an overdraft was shown on a bank statement as an asset or a liability. Defendant objected to the question being answered by the court, and it was not answered. At a noon recess one of the jurors went to a bank at the county seat where the trial was being held and there saw a blotter on which was printed a statement of assets and liabilities of the bank. This statement showed an overdraft was listed as an asset. This blotter was taken to the jury room and the attention of some of the jurors was called to it. It is now argued that this was misconduct on the part of the jury. It was misconduct, for jurors should never hunt up evidence on their own account, nor receive evidence not admitted by the trial court. We are unable to see, however, that the misconduct was of such a character as to require or to justify the granting of a new trial. The only controverted question of importance in the case was whether plaintiff loaned his money to the bank or to Mrs. Wood, personally. Whether a bank in making up a statement listed an overdraft as an asset or a liability had little, if any, bearing on that question.

Finally, it is argued that recovery on the first item was barred by the statute of limitations. The evidence does not show the loan was made for a definite time, and interest was paid on it regularly until about the time the bank closed; hence, there is no merit in this contention.

We find no material error in the record. The judgment of the court below is affirmed.

HUTCHISON, J., not sitting.